UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER ROSALES, et al., | No. 2:15-cv-01145-KJM-KJN |
| Plaintiffs, | |
| v. | ORDER |
| AMY DUTSCHKE, et al., | |
| Defendants. | |

Several Native American lineal descendants allege defendants excavated, removed and disinterred the human remains of the descendants' family members in violation of state and federal law. All defendants have moved to dismiss, as reviewed below. Defendants' motions are GRANTED for the reasons provided here.

Following hearing on the motions to dismiss, plaintiffs filed a motion to substitute a personal representative for a deceased plaintiff.[1] The court has submitted that motion on the briefs and DENIES it as explained below.

---

[1] Although the docket entry reflects this motion as one to amend, the document itself is titled a motion for substitution. *See* ECF 92.

1

I. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

The operative complaint, spanning seventeen pages, remains flawed in ways prior complaints were as well. *See generally* Third Am. Compl. ("TAC"), ECF No. 64. In resolving defendants' last motion to dismiss, the court admonished plaintiffs to comply with Rule 8(a)'s directive to articulate a "short and plain" statement showing why they believe they are entitled to relief. ECF No. 49 at 1. This complaint fares hardly better. In construing plaintiffs' allegations as best it can, the court has reviewed the operative third amended complaint and judicially noticeable documents, and considered the arguments made in the moving papers. This much is clear:

Plaintiffs allege they are Native American lineal descendants and former leaders of the half-blood Indian tribe called the Jamul Indian Village ("JIV"). TAC ¶¶ 2–7. On July 1, 2013, the National Indian Gaming Commission ("NIGC") approved the JIV's request for a Gaming Ordinance to construct a casino. *Id.* ¶ 22; JIV Gaming Or. (2013).[2] Plaintiffs allege in constructing the casino, several defendants disinterred and removed plaintiffs' families' human remains and funerary objects from the Jamul Indian Cemetery. TAC ¶¶ 11, 27. Plaintiffs further allege several defendants also failed to stop the disinterment and removal of these human remains. *Id.* ¶ 9.

Plaintiffs filed their original complaint on May 27, 2015, ECF No. 1, a first amended complaint on May 20, 2016, ECF No. 50, a second amended complaint on May 23, 2016, ECF No. 52, and the operative third amended complaint on July 5, 2016, TAC. On June 30, 2016, shortly after plaintiffs filed their second amended complaint, non-federal defendants moved to dismiss. Non-Federal Defs.' Mot. ("NFD Mot."), ECF No. 62. On July 1, 2016, federal defendants moved to dismiss plaintiffs' suit as well. Federal Defs.' Mot. ("FD Mot."),

---

[2] The Indian Gaming Regulatory Act (IGRA) requires that each federally recognized tribe enact a tribal gaming ordinance to be approved by the NIGC Chair before the tribe opens a gaming operation. 25 U.S.C.A. § 2710. The JIV's gaming ordinance was approved in July 2013. *See* Pinto Decl. Ex. 6, ECF No. 62-3. The court *sua sponte* takes judicial notice of the gaming ordinance. *See N. Cty. Cmty. All., Inc. v. Salazar*, 573 F.3d 738 (9th Cir. 2009) (taking judicial notice of NIGC letter approving Indian tribe's gaming ordinance).

ECF No. 63. After plaintiffs filed the operative third amended complaint on July 5, the court construed the pending motions as responding to the third amended complaint, which was identical in all material respects to the second amended complaint. ECF No. 66.

The third amended complaint asserts three claims: (1) unconstitutional and illegal disinterment and removal of plaintiffs' families' remains; (2) conversion; and (3) declaratory and injunctive relief. *See generally* TAC. Plaintiffs bring suit against the following federal defendants: Amy Dutschke, a regional director for the Pacific Region of the Bureau of Indian Affairs ("BIA"), and John Rydzik, Chief of the BIA's Environmental Division. *Id.* Plaintiffs also bring suit against the following non-federal defendants: Kenneth Meza, Carlene Chamberlain and Erica Pinto, all employees of the JIV ("tribal defendants"); Penn National Gaming, Inc., a corporation doing business in California; San Diego Gaming Ventures, a subsidiary of Penn National Gaming, Inc.; and C.W. Driver, a corporation doing business in California. TAC ¶¶ 7–14.[3] Plaintiffs initially also sued San Diego County but later dismissed it without prejudice. ECF No. 77. Plaintiffs have elected not to sue the JIV directly. For relief, plaintiffs ask defendants be enjoined from desecrating and removing the human remains from the "government's portion of the Indian cemetery," that defendants transfer the excavated human remains to plaintiffs, that defendants "prevent further disturbance of [p]laintiffs' human remains," and that plaintiffs be awarded $4 million in damages. TAC ¶ 40 & pp. 16–17. Plaintiffs' allegations do not make clear whether the alleged desecration and removal has occurred in the past or is ongoing.

Plaintiffs have opposed both motions to dismiss. NFD Opp'n, ECF No. 75; FD Opp'n, ECF No. 74. Defendants separately replied. FD Reply, ECF No. 80; NFD Reply, ECF No. 84. The court held a hearing on October 7, 2016, at which Patrick Webb appeared for plaintiffs, Gregory Broderick and Barbara Marvin appeared for the federal defendants, and Frank Lawrence appeared for the non-federal defendants. ECF No. 90.

---

[3] Plaintiffs also name as defendants Does 1–10. TAC ¶ 15. The court DISMISSES the Doe defendants, who have not been identified or served. Fed. R. Civ. P. 4(m) (on its own motion, court may dismiss defendants not served within ninety days after complaint is filed).

As noted above, plaintiffs have also filed a motion for substitution, relying on Federal Rule of Civil Procedure 25 and seeking to substitute Louis Ayhule Gomez as the representative of the estate of his mother plaintiff Karen Toggery, who apparently has died. The motion also seeks to substitute Mr. Gomez as the personal representative of the estate of Matthew Tinejo Toggery, Mr. Gomez's brother. ECF No. 92 at 1–2. Defendants have opposed this motion and plaintiffs have replied. ECF Nos. 93, 94, 95.

II. MOTION TO DISMISS

A. Parties' Arguments

Non-federal defendants' argument for dismissal proceeds in two steps that the court addresses here. First, non-federal defendants argue because tribal defendants Kenneth Meza, Carlene Chamberlain and Erica Pinto are JIV employees, they are immune from suit. NFD Mot. at 9, 14–16 (moving to dismiss based on Fed. R. Civ. P. 12(b)(1)). Second, non-federal defendants contend plaintiffs' case cannot proceed because the JIV, a necessary and indispensable party, cannot be joined. *Id.* (relying on Fed. R. Civ. P. 19). In response to the first argument, plaintiffs contend because Meza, Chamberlain and Pinto "violated state and federal law in excess of their official authority," they have no immunity. NFD Opp'n at 26. Plaintiffs' opposition does not address the second argument. *See generally* NFD Opp'n. As articulated below, the court concludes the JIV employees are immune from suit. The court also concludes plaintiffs' case cannot proceed because JIV is a necessary and indispensable party that cannot be joined. The court need not reach defendants' additional arguments. Non-federal defendants' motion to dismiss will be GRANTED.

Federal defendants Dutschke and Rydzik contend plaintiffs' federal constitutional claims must be dismissed because the claims are not recognized under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1999) and its progeny. FD Mot. at 4. Federal defendants further contend the conversion claim must be dismissed because plaintiffs have not complied with the Federal Tort Claims Act. *Id.* at 2. Lastly, federal defendants contend plaintiffs' claims for declaratory and injunctive relief must be dismissed because the "actions" giving rise to these relief requests are not "final agency action[s]" under the Administrative Procedure Act. *Id.* The

4

court resolves the federal defendants' motion on other grounds, however, because even when not specifically asserted, "[t]he absence of 'necessary' parties may be raised by reviewing courts *sua sponte*." *CP Nat. Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 911 (9th Cir. 1991) (quoting *inter alia McCowen v. Jamieson*, 724 F.2d 1421, 1424 (9th Cir. 1984)). While in some cases the court may join a party to achieve full and fair resolution, *id.*, that route is not a possibility here. Because JIV is a necessary and indispensable party to this suit, but cannot be joined, plaintiffs' case cannot proceed against the federal defendants. The court will DISMISS the case against the federal defendants as well.

### B. Non-federal tribal defendants Meza, Chamberlain and Pinto Protected by Immunity?

As briefly recounted above, non-federal defendants contend plaintiffs lack standing because tribal defendants Meza, Chamberlain, and Pinto, as JIV employees are immune from suit. NFD Mot. at 9, 14–16. In contending as much, non-federal defendants rely on Rule 12(b)(1). *Id.* Before moving to the merits of non-federal defendants' immunity argument, the court reviews legal standards governing standing.

#### 1. Standing Legal Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) contests the court's subject matter jurisdiction. *See, e.g., Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003). When a party moves to dismiss for lack of subject matter jurisdiction, "the plaintiff bears the burden of demonstrating that the court has jurisdiction." *Boardman v. Shulman*, No. 12–00639, 2012 WL 6088309, at *2 (E.D. Cal. Dec. 6, 2012), *aff'd sub nom. Boardman v. C.I.R.*, 597 F. App'x 413 (9th Cir. 2015). Where, as here, defendants move to dismiss on the basis of tribal sovereign immunity, "the party asserting subject matter jurisdiction has the burden of proving its existence, i.e., that immunity does not bar the suit." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (internal citations omitted).

/////

/////

To establish standing, (1) the plaintiff must have suffered an "injury-in-fact," (2) there must be a "causal connection between the injury and the conduct complained of," and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). To find an "injury in fact," the plaintiff must demonstrate "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal citations and quotation marks omitted).

Standing to sue is a necessary component of the court's subject matter jurisdiction. C*etacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). Accordingly, if a plaintiff lacks standing, the court lacks subject matter jurisdiction under Article III of the U.S. Constitution. *Id.*

2. <u>Immunity Legal Standards</u>

Absent congressional abrogation or explicit waiver, sovereign immunity bars suit against a federally recognized Indian tribe in federal court. *Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1091 (9th Cir. 2007). Here, despite plaintiffs' repeated protestations to the contrary, *see* TAC ¶ 12; NFD Opp'n at 10 n.1, the JIV is a federally recognized Indian tribe and is thereby immune from suit. *Rosales v. United States*, 73 F. App'x 913, 914 (9th Cir. 2003) ("The Village enjoys sovereign immunity from suit and cannot be forced to join this action without its consent."); *Rosales v. United States*, 89 Fed. Cl. 565, 571 (2009) ("Jamul Indian Village . . . [is a] a federally-recognized tribal government.").

The tribe's sovereign immunity extends to tribal officials and employees acting within the scope of their valid authority. *Burlington*, 509 F.3d at 1091–92. The Supreme Court, however, has extended the familiar *Ex Parte Young* doctrine allowing for prospective non-monetary relief, to provide for suits against tribal officials in their official capacity. *See Ex parte Young*, 209 U.S. 123 (1908); *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1181 (9th Cir. 2012). For the *Ex parte Young* doctrine to apply, a plaintiff must allege officials violated the federal Constitution, a federal statute or federal common law. *Salt River Project*, 672 F.3d at 1181.

3. <u>Discussion</u>

Plaintiffs argue Meza, Chamberlain and Pinto are not immune because they acted outside the bounds of their lawful authority in violation of the Native American Graves Protection and Repatriation Act (NAGPRA), 25 U.S.C. §§ 3001–13. NFD Opp'n at 26. NAGPRA imposes restrictions on the intentional excavation and removal of Native American human remains and objects, as well as the inadvertent discovery of Native American remains and objects. 25 U.S.C. § 3002(c)–(d). Under NAGPRA, the "intentional removal from or excavation of Native American cultural items from Federal or tribal lands" may only be conducted with a permit issued under the Archaeological Resources Protection Act, 16 U.S.C. § 470cc (ARPA), and after consultation with or consent by the affected Indian tribe. 25 U.S.C. § 3002(c). In this context, "appropriate Indian tribe" means the tribe affected by the intentional removal from or excavation of Native American cultural items. *See Yankton Sioux Tribe v. U.S. Army Corps of Engineers*, 209 F. Supp. 2d 1008, 1018–19 (D.S.D. 2002) (Yankton Sioux was "appropriate Indian tribe" because human remains from tribe were located on burial grounds discovered by defendants). In the event of inadvertent discovery of Native American remains or objects on federal or tribal lands, NAGPRA requires notification to the head of the agency with primary management authority over the site where the objects are found. 25 U.S.C. § 3002(d)(1). If an inadvertent discovery occurs in connection with an activity, the person finding the items must "cease the activity in the area of the discovery, make a reasonable effort to protect the items discovered before resuming such activity, and provide notice" of the discovery. *Id.*

Here, plaintiffs' allegations are vague and conclusory. Plaintiffs do not specify which defendants intentionally or inadvertently excavated and removed the human remains. Where tribal defendants' immunity hinges on the nature of their specific conduct, plaintiffs must allege more before the court can assume on a motion to dismiss that Meza, Chamberlain or Pinto excavated or removed any familial remains, and thus are not immune. *See Winnemem Wintu Tribe v. U.S. Dep't of Interior*, 725 F. Supp. 2d 1119, 1145 (E.D. Cal. 2010) (given "vague and conclusory" allegations, "plaintiffs fail to state . . . a violation of NAGPRA by any defendant."); *cf. Solis v. Cty. of Stanislaus*, No. 14–0937, 2014 WL 7178175, at *3 (E.D. Cal. Dec. 16, 2014)

(dismissing complaint where plaintiff "lumps all defendants together" without differentiation); *Grant v. WMC Mortg. Corp.*, No. 10–1117, 2010 WL 2509415, at *3 (E.D. Cal. June 17, 2010) (same). Plaintiff has not adequately alleged NAGPRA violations against Meza, Chamberlain or Pinto.

Plaintiffs further contend Meza, Chamberlain, and Pinto each may be sued in their individual or personal capacity for monetary relief. NFD Opp'n at 20. But the complaint does not allege Meza, Chamberlain or Pinto took action outside their capacities as JIV officials. *See generally* TAC. "[A] plaintiff cannot circumvent tribal immunity by the simple expedient of naming an officer of the Tribe as a defendant, rather than the sovereign entity." *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 727 (9th Cir. 2008) (citation and quotation marks omitted). Meza, Chamberlain and Pinto are immune from suit. Because they are immune, the court cannot grant plaintiff a favorable decision for their claims against Meza, Chamberlain and Pinto. *Lujan*, 504 U.S. at 560–61. Accordingly, defendants' motion to dismiss plaintiffs' claims against Meza, Chamberlain and Pinto for lack of standing is GRANTED.

C. <u>Necessary and Indispensable Party: Non-federal and Federal Defendants</u>

If Meza, Chamberlain and Pinto are dismissed, the other non-federal defendants request full dismissal, arguing the JIV is a necessary and indispensable party that cannot be joined. NFD Mot. at 9–13. As noted, while federal defendants do not raise this argument, this issue can nonetheless be considered *sua sponte* as to the case against them as well. *CP Nat. Corp.*, 928 F.2d at 91. The court opts to raise the issue here.

Rule 12(b)(7) allows a litigant to request dismissal for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). "Federal Rule of Civil Procedure 19 imposes a three-step inquiry:" (1) "Is the absent party. . . required to be joined if feasible. . . under Rule 19(a)?" (2) "If so, is it feasible to order that the absent party be joined?" (3) "If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed?" *Salt River Project*, 672 F.3d at 1179 (footnote and citation omitted). At the third step, the court considers the demands of "equity and good conscience." Fed. R. Civ. P. 19(b). The inquiry is fact-specific and practical. *N. Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466,

468 (9th Cir. 1986). For this reason, the court may need to review evidence beyond the pleadings. *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).

Here, plaintiffs allege (1) the JIV is not a federally recognized tribe, (2) the land at issue in the suit—the Jamul Indian Cemetery—is not Indian Land, and (3) non-federal defendants' actions violated section 10.8.3(c) of the Compact between the Tribe and the State of California, TAC ¶¶ 12, 33.[4] Non-federal defendants contend the JIV cannot be joined because it has not waived its sovereign immunity and plaintiffs' claims cannot be litigated in the JIV's absence, in equity and good conscience. NFD Mot. at 11–12.

1. Whether the Tribe Is a Necessary Party

An absent party is necessary if that party "claims an interest relating to the subject of the action and is so situated that the disposition of the action in the [party's] absence may . . . as a practical matter impair or impede the person's ability to protect that interest[.]" Fed. R. Civ. P. 19(a); *White v. Univ. of Cal.*, 765 F.3d 1010, 1026 (9th Cir. 2014).

Here, plaintiffs directly challenge the JIV's identity as a recognized tribe and the extent of its interest in the Jamul Indian Cemetery. TAC ¶ 12. Federal defendants Amy Dutschke and John Rydzik maintain responsibility over the cemetery because the United States, not the JIV, holds title to the land. *Id.* ¶¶ 7–9. JIV's identity and interest in property are "legally cognizable interests" or "legally protected interests" within Rule 19's scope. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 880, 882–83 (9th Cir. 2004); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990); *see also Jamul Action Comm. v. Chaudhuri*, 200 F. Supp. 3d 1042, 1049 (E.D. Cal. 2016) (challenges to Tribe's identity and extent of interest in property are "legally cognizable interests or legally protected interests within

---

[4] The court takes judicial notice of the Compact between the State of California and the Jamul Indian Village, reached in October 1999. *See* http://www.cgcc.ca.gov/documents/compacts/original_compacts/Jamul_Compact.pdf (last visited August 29, 2017). *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. Cal.*, 547 F.3d 962, 968 (9th Cir. 2008). Section 10.8.3(c) requires the Tribe and the State to periodically meet and confer to ensure "significant adverse impacts to the off-Reservation environment resulting from projects undertaken by the Tribe may be avoided or mitigated." JIV-California Compact Section 10.8.3(c).

9

Rule 19's scope." (internal citations omitted)). If this action were to proceed in the JIV's absence, the JIV would be in no position to file motions or take discovery to protect its sovereignty and its property interests.

Further, plaintiffs allege defendants' excavation and construction activities violate the tribal-state Compact between the JIV and the State of California. TAC ¶ 33. The Ninth Circuit has "repeatedly held that '[n]o procedural principle is more deeply imbedded in the common law than that, in an action [challenging the terms of] a contract, all parties who may be affected by the determination of the action are indispensable.'" *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1082 (9th Cir. 2010) (alteration in original) (quoting *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975)); *see also Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002) ("[A] party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking [attack the terms of] contract."); *Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999) ("[A] district court cannot adjudicate an attack on the terms of a negotiated agreement without jurisdiction over the parties to that agreement."); *see also Jamul Action Comm.*, 200 F. Supp. 3d at 1050 (extending contractual protection to tribal compacts). The JIV is a necessary party to plaintiffs' suit.

2. <u>Whether the Tribe Can Be Joined and Is Indispensable</u>

The JIV has not waived the sovereign immunity to which it is entitled. Its joinder is therefore not feasible. *See, e.g., Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58–59 (1978) ("a waiver of sovereign immunity cannot be implied but must be unequivocally expressed). The court therefore turns to the question, "[i]f joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed?" *Salt River Project*, 672 F.3d at 1179.

To determine if a party is indispensable, the court looks to the following four factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

>    (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;
>
>    (3) whether a judgment rendered in the person's absence would be adequate; and
>
>    (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b); *White*, 765 F.3d at 1028. Rule 19 is designed to protect "a party's right to be heard and to participate in adjudication of a claimed interest, even if the dispute is ultimately resolved to the detriment of that party." *White*, 765 F.3d at 1026–27 (quoting *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992)).

The JIV's interest in its tribal status, in real property in which it claims title and in the tribal-state Compact, cannot be adjudicated without its formal presence. Should the court grant relief to plaintiffs and enjoin defendants from conducting excavation and construction activities on the JIV cemetery land, the judgment would be highly prejudicial to the JIV, who would be deprived of an opportunity to govern activities on its property if determined to be the proper owner. Any ruling in plaintiffs' favor also would practically impair the JIV's sovereign power to negotiate or renegotiate a compact with California. *See Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1024 (9th Cir. 2002) (because prohibiting casino-type gambling would affect California-tribe compact, tribe was indispensable party).

Further, no judgment for plaintiffs would lessen prejudice to the JIV while providing adequate relief to plaintiffs. *Clinton*, 180 F.3d at 1090; *Pit River Home & Agr. Co-op. Ass'n v. United States*, 30 F.3d 1088, 1101–03 (9th Cir. 1994) (federally recognized Council of Indian tribe was indispensable party where "any decision adverse to the Tribe would prejudice the Council in its governance of the Ranch."). Without the JIV's participation, an order prohibiting further disinterment and removal of plaintiffs' families' remains and funerary objects could prejudice JIV conduct without its opportunity to be heard. Accordingly, the relief plaintiffs seek, to prohibit disinterment and removal of plaintiffs' families' remains and funerary objects, could not be fashioned to lessen prejudice here. *See Pit River*, 30 F.3d at 1102 (federally recognized

governing body of Indian tribe was indispensable party to claims where no adequate relief could be provided in the governing body's absence).

Finally, that no adequate remedy or alternative forum exists for plaintiffs to seek relief does not preclude judgment here: JIV's interest in maintaining its sovereign immunity outweighs plaintiffs' interest. *See Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1460–61 (9th Cir. 1994) ("[A p]laintiff's interest in litigating a claim may be outweighed by a tribe's interest in maintaining its sovereign immunity' . . . [because] society has consciously opted to shield Indian tribes from suit without congressional or tribal consent." (citations omitted)).

The JIV is an indispensable party. This case cannot proceed without JIV, and because JIV cannot be joined, this case cannot proceed on the operative complaint. Non-federal defendants' motion is GRANTED in this respect, and the federal defendants are DISMISSED as well.

III.     LEAVE TO AMEND

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend is to be granted freely. Fed. R. Civ. P. 15(a). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). The court need not grant leave to amend, however, if doing so would be futile. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

The joinder constraints discussed above pose an insurmountable barrier to plaintiffs' ability to amend the complaint to proceed on their claims. At hearing on the motions to dismiss, plaintiffs did not offer any avenue by which they could amend to salvage their case. Nothing in the record before the court provides a basis for allowing leave to amend, and the court finds doing so would be an exercise in futility.

IV.     SUBSTITUTION

In light of the court's granting of defendants' motions to dismiss without leave to amend, there is no longer an operative complaint before the court and no prospect for such a

complaint to be filed. Therefore, plaintiffs' motion for substitution, even if it is as plaintiffs suggest merely a placeholder for an amended motion providing further details to satisfy Rule 25, is DENIED as MOOT.

V. CONCLUSION

Defendants' motions to dismiss are GRANTED WITHOUT LEAVE TO AMEND. Plaintiffs' motion to substitute is DENIED as MOOT. The parties' stipulation to continue hearing on plaintiffs' motion for substitution, ECF No. 96, is DENIED as MOOT as well.

This order resolves ECF Nos. 62-1 and 63-1, 92 and 96.

This case is CLOSED.

IT IS SO ORDERED.

DATED: August 29, 2017.

_____
UNITED STATES DISTRICT JUDGE